O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICHARD T. KENNEDY, | ) | CASE NO. CV 11-03809 RZ |
| Plaintiff, | ) ) | |
| vs. | ) ) | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Richard T. Kennedy asserts that the Social Security Commissioner committed two errors that require reversal. The Court disagrees.

The Administrative Law Judge found that Plaintiff had "the following severe impairments: sickle cell anemia, avascular necrosis and osteoarthritis of the hips and borderline intellectual functioning." [AR 18] However, Plaintiff contends that the Administrative Law Judge should have found that Plaintiff equaled Listing No. 12.05C for mental retardation. A person who meets or equals a listing, of course, is presumptively disabled without further consideration. *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1996).

Listing 12.05C has two components. First, the claimant must have a valid verbal, performance, or full scale IQ of 60 through 70. Second, the claimant must have a physical or other mental impairment imposing an additional and significant work-related limitation or function. Plaintiff concedes that he did not *meet* this listing, because he had

an IQ score of 71, one point outside the range identified by the first component of the listing.

Plaintiff argues, however, that he *equals* the listing. He quotes an internal Social Security operations manual that says, in part, that "slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination." (Plaintiff's Memorandum in Support of Complaint 5: 7-9, citing POMS DI 24515.056.) Plaintiff then argues that, because the Administrative Law Judge found that he was limited to sedentary work, he has an additional and significant work-related limitation of function, and therefore he should be deemed to equal the listing.

There are several things wrong with Plaintiff's argument. To begin with, the internal operations manual POMS is just that — an internal manual. It does not impose judicially-enforceable duties on either the Court or the Administrative Law Judge. Its only power is to persuade where there is an ambiguous regulation and then, of course, only if it is persuasive. *Carillo-Yeras v. Astrue*, __ F.3d __, 2011 WL 5041912 at *3 (9th Cir. October 25, 2011); *Lockwood v. Commissioner, Social Security Administration*, 616 F.3d 1068, 1072-73 (9th Cir. 2010).

Moreover, the interpretation Plaintiff places on the statement from POMS is not in fact what POMS says. Plaintiff reads POMS as stating that, if the IQ score lies between 70 and 75, then a claimant equals the listing if the claimant also has an additional and significant functional limitation. This reading would change the regulation from requiring an IQ below 70 to an IQ below 75. That is not a permissible reading.

Beyond all this, however, Plaintiff has misunderstood the concept of equivalence of a listing. Equivalence requires *medical* equivalence. Equivalence must be based on medical findings that are supported by medically acceptable clinical and laboratory diagnostic techniques, and/or the opinions of doctors consulted by the Commissioner. 20 C.F.R. § 404.1526. Those medical findings must be at least equal in severity and duration to the listing findings 20 C.F.R. § 404.1526(a). Conflating the two

components of Listing 12.05C into a single component does not comport with the requirement of showing equivalent medical findings. *See Brouse v. Chater*, 161 F.3d 11, 1998 WL 567964 (9th Cir. 1998) (unpublished opinion).

    The Plaintiff must show at least a plausible theory that there is such medical equivalence, *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001); otherwise, the Court cannot say that the Administrative Law Judge's finding that Plaintiff does not meet or equal a listing is clearly erroneous. If, for example, there were an alternative test that might be equivalent to the IQ requirement of between 60 and 70, then the Administrative Law Judge would have been required to evaluate the alternative test and explain if it met the test of medical equivalence. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Here, however, Plaintiff has identified no alternative test or other medical findings that, if evaluated, might lead to a conclusion of medical equivalence. Under those circumstances, the Administrative Law Judge was not required to make any further equivalence determination than he did. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

    Plaintiff places much reliance on *Fanning v. Bowen*, 827 F.2d 631 (9th Cir. 1987), but that case does not help him. *Fanning* enunciated the standard for evaluating the second component of § 12.05C, holding that "an impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." 827 F.2d at 633. This standard since has been supplanted by regulation, and the standard now is that the impairment must be severe as that term is used in 20 C.F.R. § 404.1520(c) and 20 C.F.R. § 416.920(c). *See Rhein v. Astrue*, 2010 WL 4877796 at *10 (E.D. Cal. 2010). Whatever the standard, however, the issue is not what is required under the second component. Plaintiff satisfies the second component. Simply satisfying that component, however — even if, as Plaintiff argues here, he *really* satisfied it because he is significantly impaired — does not constitute medical equivalence.

    Plaintiff makes an additional argument for reversal. Plaintiff also asserts that the Administrative Law Judge did not identify alternate occupations within Plaintiff's

remaining functional capabilities. Plaintiff's argument here is that the occupations require a greater language aptitude than he possesses. The problem with his argument, however, is that it is built on speculation. Plaintiff asserts that a person with his IQ falls within the bottom three percent of the population, but that the occupations identified by the Administrative Law Judge are occupations that require a general language aptitude possessed by the bottom third of the population, excluding the top (Plaintiff says bottom, but the scale itself says top, Plaintiff's Memorandum at 9-2) ten percent. Missing from this creative argument, however, is any demonstrated correlation between IQ tests and general language aptitude. The Labor Department's aptitude scale does not reference IQ tests, and just because both IQ tests and the aptitude scales refer to percentages of the population does not mean that the findings are interchangeable. To make the point more stark, one might look at one of the other aptitudes classified by the Labor Department, such as motor coordination. A person falling within the bottom ten percent on that aptitude nevertheless could be a genius as measured on the IQ test. There simply is no basis, on the record created before the Commissioner, for giving credence to Plaintiff's argument here. *See Ariola v. Astrue*, 2009 WL 1684542 at *6 (C.D. Cal. 2009); *Vasquez v. Astrue*, 2009 WL 3672519 at *3 (C.D. Cal. 2009).

In accordance with the foregoing, the Commissioner's decision is affirmed.

DATED: January 13, 2012

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE

-4-